UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
EXPORT-IMPORT BANK OF THE         : 03 Civ. 8554 (LTS) (JCF)
UNITED STATES,                    :
                                  :    MEMORANDUM
                                  :    AND  ORDER
              Plaintiff,          :
                                  :
    - against -                   :
                                  :
ASIA PULP & PAPER CO., LTD.,      :
PT INDAH KIAT PULP & PAPER TBK,   :
PT PABRIK KERTAS TJIWI KIMIA TBK  :
AND PI PINDO DELI PULP & PAPER    :
MILLS                             :
                                  :
              Defendants.         :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

The defendant, Asia Pulp & Paper Company, Ltd. ("APP" or "the company"), seeks to reopen discovery, which closed on July 19, 2005, for a period of thirty to sixty days. APP argues that the extended discovery period is necessary because APP learned of relevant evidence only in the last days of discovery, and, in the case of two witnesses, had already issued subpoenas but was unable to schedule depositions before discovery closed.

This is the second round of fully briefed discovery skirmishes between the plaintiff and defendant. On May 25, 2005, each party moved to compel the other to produce documents being withheld as privileged communications; in addition, APP asked for an order requiring the plaintiff, the Export-Import Bank of the United States ("Ex-Im" or "the agency"), to improve its privilege log. On

November 8, 2005, I issued a Memorandum and Order requiring Ex-Im to revise its privilege log and directing APP to disclose attorney-client communications the company shared with its financial advisors. The Memorandum and Order established a new timetable: it pushed the next litigation deadline, a due date for the submission of a summary judgment motion or pre-trial order, back sixty days to January 31, 2006.

Shortly after the close of discovery and before I issued the November 8th Memorandum and Order, APP filed this motion seeking to obtain documents identified in the last days of discovery, to depose two witnesses who had already been subpoenaed, and to subpoena and depose an official of the United States Department of State. APP's motion is granted.

Background

The details of the underlying dispute between APP and Ex-Im are set forth in the November 8, 2005, Memorandum and Order. In brief, Ex-Im, a United States government agency that promotes American exports by backing commercial loans to oversees buyers of American products, instituted this lawsuit to recover money due from APP under several promissory notes. (Second Amended Complaint ("SAC"), ¶¶ 1,9). APP, a Singapore company, is one of the world's largest paper manufacturers. (SAC, ¶¶ 5-8,18). In March 2001, with worldwide debts approaching $14 billion, APP stopped payments on all of its loans. (Declaration of Ferry Siswojo Djongianto in

opposition to Plaintiff's Motion to Compel Disclosure.) This triggered an intensive period of negotiations between APP and its worldwide creditors, including Ex-Im, to restructure APP's debt. On Oct 29, 2003, on the eve of the signing of a master restructuring agreement, Ex-Im withdrew from the negotiations and commenced this action. (Declaration of Kenneth R. Puhala in Support of Defendant's Motion to Compel and Certification of Good Faith ("Puhala Decl."), ¶¶ 5, 6).

Most of the discovery requests in APP's current application spring from information APP gleaned during depositions conducted in the last week of the discovery period, July 12 to July 19, 2005. On July 12, 2005, APP deposed Carl Leik, a former thirty-year veteran of Ex-Im, who testified that he recorded significant personal and business events in a journal, the existence of which had not previously been disclosed to APP despite APP's demand early in discovery for "[a]ll documents consisting of Charles [sic] Leik's personal files that concern the Loans, the Restructuring or APP." (Declaration of Benjamin P. Deutsch in Support of Defendant's Motion to Extend and Compel Discovery ("Deutsch Decl."), ¶ 25; Declaration of AUSA Nicole Gueron in Opposition to APP's Motion to Extend and Compel Discovery ("Gueron Decl."), Exh. 1, ¶ 20). Mr. Leik explained that he maintained the journal on a home computer and had possession of it in paper and computer form. (Deposition of Carl Leik ("Leik Dep."), attached in part as Exh. A

to Deutsch Decl., at 91).

On July 14, 2005, APP deposed Shari Villarosa, a former economic section chief at the U.S. Embassy in Indonesia, to obtain information about the State Department's involvement in the debt restructuring negotiations. (Deutsch Decl., ¶¶ 6, 37; Deposition of Shari Villarosa ("Villarosa Dep."), attached in part as Exh. B to Deutsch Decl.). Ms. Villarosa was the State Department's choice of a deposition witness: APP had subpoenaed two United States ambassadors for deposition and the State Department provided Ms. Villarosa instead. (Deutsch Decl., ¶¶ 35, 37). During her deposition, Ms. Villarosa disclosed that for eight months in 2002 while she was temporarily stationed in East Timor, her deputy, William Heidt, had stepped into her shoes as chief of the economic section at the embassy. (Villarosa Dep. at 22-23). The eight months were a period during which the State Department was involved in helping Ex-Im coordinate the negotiating position of several creditor nations. (Deutsch Decl., ¶ 33).

On July 19, 2005, APP deposed Lynette Brown, a lawyer formerly at the firm of Norton Rose and Ex-Im's outside counsel in the APP negotiations. (Deutsch Decl., ¶ 53; Deposition of Lynette Brown ("Brown Dep."), attached in part as Exh. Q to Deutsch Decl.). Ms. Brown testified that she kept notes about all of her APP-related meetings (Brown Dep. at 195-96). Ex-Im contends that it alerted APP to the existence of Ms. Brown's notes in its privilege log.

According to APP, however, it did not recognize that Ms. Brown's notes were among those listed in the privilege log because the entries lacked critical identifying information. (Deutsch Decl., ¶ 53).

APP seeks to reopen discovery to compel Ex-Im to produce Mr. Leik's journals or, if Ex-Im is unable to take possession of the journals, to permit APP to subpoena Mr. Liek; to permit APP to subpoena and depose Mr. Heidt; and to compel Ex-Im either to produce Ms. Brown's notes or to revise its privilege log.

APP also asks to depose two APP bondholders about the role they played in convincing Ex-Im to take a hard line with APP during the restructuring negotiations. (Deutsch Decl., ¶ 50). APP subpoenaed the bondholders, Oaktree Capital Management LLC ("Oaktree") and Gramercy Advisors LLC ("Gramercy"), on March 3, 2005, seeking both documents and testimony. (Deutsch Decl., ¶ 48). The two bondholders, who are traders in distressed debt, are plaintiffs in a separate action against APP in New York State Supreme Court. (Deutsch Decl., ¶ 48 & n.2). They produced documents responsive to APP's subpoena at the end of May. In June, APP and the bondholders began to discuss scheduling depositions, but they did not settle on a date before the end of discovery. (Deutsch Decl., ¶ 48).

Discussion

    A. Carl Leik's Journal

Ex-Im opposes production of Carl Leik's journal for two reasons: first, the agency contends, the journal was not encompassed within APP's document requests and, therefore, the application should be set aside as untimely; second, the journal is not within Ex-Im's possession, custody, or control.

Ex-Im acknowledges that APP requested all documents consisting of Mr. Leik's personal files concerning APP in a timely manner and does not dispute that Mr. Leik's journal contains entries about the APP talks. The agency argues, however, that if APP meant the request to encompass Mr. Leik's personal journal, APP should have defined the term "personal files." This argument is unpersuasive.

Ex-Im raises a more significant objection when it claims that it does not possess Mr. Leik's journal. As set forth in Rule 34 of the Federal Rules of Civil Procedure, parties are entitled to documents in the "possession, custody or control" of other parties. If the party from whom production is sought does not actually have the document in hand, courts look to see whether the party has control of it, construing the word "control" broadly. "A party controls documents that it has the right, authority, or ability to obtain upon demand." Scott v. Arex, Inc., 124 F.R.D. 39, 41 (D. Conn. 1989); see also In re NASDAQ Market-Makers Antitrust Litigation, 169 F.R.D. 493, 530 (S.D.N.Y. 1996) (noting that courts

have "'interpreted Rule 34 to require production if the party has the practical ability to obtain the documents from another, irrespective of his legal entitlement'")(quoting Golden Trade S.r.L. v. Lee Apparel Co., 143 F.R.D. 514, 525 (S.D.N.Y. 1992).

Analyzing the practical ability of corporations to obtain work-related documents from former employees, courts insist that corporations, at the very least, ask their former employees to cooperate before asserting that they have no control over documents in the former employees' possession. See Herbst v. Able, 63 F.R.D. 135, 138 (S.D.N.Y. 1972); In re Folding Carton Antitrust Litigation, 76 F.R.D. 420, 423 (N.D. Ill. 1977).

There is no indication in the record that Ex-Im has made any attempt to obtain the journal entries APP seeks from Mr. Leik or that Mr. Leik refuses to cooperate. Ex-Im must exhaust the practical means at its disposal to obtain the documents from Mr. Leik. As APP notes, the fact that Ex-Im secured Mr. Leik's appearance at a deposition suggests that it has the practical means to obtain the relevant portions of his journal from him. If Ex-Im fails to produce Mr. Leik's journal, APP has leave to subpoena Mr. Leik directly.

B. Deposition of William Heidt

Having deposed Shari Villarosa about the State Department's involvement in APP's debt restructuring process, APP wishes now to depose William Heidt. Mr. Heidt was Ms. Villarosa's deputy in the

economics section at the United States Embassy in Jakarta, Indonesia, and during eight months in 2002, while Ms. Villarosa was temporarily assigned to East Timor, Mr. Heidt helped direct the State Department's involvement in the APP restructuring talks. (Villarosa Dep. at 22; Letter of James K. Hess dated August 12, 2003, attached as Exh. L to Deutsch Decl.)

Federal discovery rules authorize APP to subpoena Mr. Heidt. Fed. R. Civ. P. 30(a)(1). The question is whether APP is time-barred from issuing a subpoena now that the discovery period has closed. Under the federal rules, modifications of discovery schedules are permitted upon a showing of good cause, Fed. R. Civ. P. 16(b), with "good cause" being liberally construed, 6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1522.1 (1990). A party seeking discovery meets this standard by demonstrating that it could not reasonably meet its deadline despite diligent efforts. Id. I find that APP has shown good cause.

The State Department, appearing in this case as a special non-party, pins its opposition to APP's application on APP's failure to subpoena Mr. Heidt during the discovery period. (Specially Appearing Non-party the United States Department of State's Memorandum of Law in Opposition to APP's Motion to Extend and Compel Discovery ("State Dept. Memo.") at 1). The State Department maintains that APP could have served a Rule 30(b)(6) subpoena on

the State Department or a Rule 45 subpoena directly on Mr. Heidt, but instead chose to subpoena two ambassadors, Ralph Boyce, former United States Ambassador to Indonesia, and C. Lawrence Greenwood, the Asia-Pacific Economic Cooperation Ambassador.  The State Department chose Ms. Villarosa because she was familiar with the State Department's work in Jakarta on the APP deal and because her time was less valuable than two high-ranking diplomats'.[1]  That did not mean, however, that APP was barred from seeking to depose Mr. Heidt.  (State Dept. Memo. at 2-3).

To APP's assertion that APP did not realize that Mr. Heidt, not Ms. Villarosa, was the person who orchestrated the State Department's efforts in Jakarta in 2002, the State Department answers that APP had the means to discover Mr. Heidt's significance.  Among the thousands of pages of documents the government produced in the spring of 2005, there were hundreds with Mr. Heidt's name on them, either as author or recipient.  (State Dept. Memo. at 5).  Moreover, one of the documents Ex-Im produced during discovery, a letter from the Ex-Im's chief executive to a State Department undersecretary, praised Mr. Heidt at length and in considerable detail for the work he did on the APP restructuring

---

[1] Pursuant to State Department regulations, Department officials determine whether subpoenaed personnel, including ambassadors, shall comply with discovery demands issued in litigation where the State Department is not a party. 22 C.F.R. §§ 172.1, 172.4.  The regulations direct agency officials to take into account, among other things, the need to conserve State Department employees' time.  22 C.F.R. § 172.8.

deal. (State Dept. Memo. at 5).

The State Department's argument, though, does not squarely address APP's claim that it was the State Department's assurances concerning Ms. Villarosa that led APP to overlook clues in the avalanche of pages produced that there might be a better State Department witness. APP first subpoenaed Ambassadors Boyce and Greenwood in November 2004. In January 2005, the State Department characterized Ms. Villarosa as the "one you want," explaining to APP lawyers that Ms. Villarosa was present during Jakarta during the relevant time period and attended meetings about the APP negotiations alongside Ambassador Boyce.

Within eight days of learning at Ms. Villarosa's July 14, 2005, deposition that Mr. Heidt was actively involved in the State Department's efforts during Ms. Villarosa's absence, APP wrote to Ex-Im demanding to depose Mr. Heidt. (Letter of Benjamin P. Deutsch dated July 21, 2005, attached as Exh. C to Deutsch Decl.). On July 27, 2005, APP wrote to alert the Court of APP's intention to file a motion to compel discovery if the emerging dispute could not be resolved. APP's motion followed soon after. (Letter of Benjamin P. Deutsch dated July 27, 2005, attached as Exh. 3 to Gueron Decl.).

APP has shown cause -- good cause -- for failing to subpoena Mr. Heidt before the end of discovery: it believed the State Department's assurances about Ms. Villarosa. The company has also

shown diligence in attempting to cure its mistake.  Its application for an extension of discovery for the purpose of issuing a subpoena to depose Mr. Heidt is therefore granted.

    C.  <u>Lynette Brown's Notes</u>

APP requests an order compelling Ex-Im either to produce notes taken by a Norton Rose attorney, Lynette Brown, or to revise its privilege log.  Ex-Im opposes APP's application as untimely because, it maintains, APP was alerted to the existence of Ms. Browns's notes by entries concerning Norton Rose documents in Ex-Im's privilege log.

As discussed in detail in my November 8, 2005, Memorandum and Order, Ex-Im's privilege log lacks necessary information about withheld documents.  Entries regarding the Norton Rose documents illustrate the deficiencies of the log.  It is impossible to tell who wrote dozens of Norton Rose documents because no person is listed as author.  (<u>See, e.g.</u>, Amended Privilege Log, attached as Exh. S to Deutsch Decl., Document Nos. 00573, 00574, 00576, 00577). Nor is it possible to learn at what stage of the restructuring process the Norton Rose documents were written because the documents have no dates.  No recipient is listed, so it is not possible to determine whether the document was prepared for the client, Ex-Im, or for some other entity,  and the descriptions of the documents lack specificity, stating, for example, "attorney notes regarding meetings" or "email regarding agenda/meetings."

It is not reasonable to suppose, as Ex-Im does, that APP had notice of Ms. Brown's notes and could have made its demands for them or for clarity in the privilege log before the close of discovery. Ex-Im must either turn the notes over to APP or list them in a privilege log in such a way as to "establish all elements of the [asserted] privilege." Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 470 (S.D.N.Y. 1993). Mere conclusory assertions will not discharge this burden. Rather, Ex-Im "must demonstrate that the [withheld] information . . . was a communication between client and counsel or his employee, that it was intended to be and was in fact kept confidential, and that it was made in order to assist in obtaining or providing legal advice or services." Id.

D. Oaktree and Gramercy Depositions

Finally, APP asks the court to reopen the discovery period to permit depositions of two third-party companies, Oaktree and Gramercy ("the bondholders"), traders in distressed debt. APP subpoenaed the witnesses in early March 2005, during the discovery period. By the time Oaktree and Gramercy produced responsive documents, on May 27, 2005, APP had entered a period of briefing its previous discovery motion and was taking the depositions of Ex-Im and State Department witnesses. APP was sufficiently diligent and the scheduling bottleneck was sufficiently demanding to provide APP with good cause to reopen discovery for the limited purpose of

deposing Oaktree and Gramercy. APP's request is granted.

In May 2005 APP and the bondholders drafted and signed a Stipulation limiting the scope of the depositions to questions concerning communications the bondholders had with Ex-Im and other government agencies about Ex-Im or APP. (Deutsch Decl., ¶ 50 n.2 and Exh. M). The bondholders have asked APP to request an order from this Court enforcing the Stipulation. This request is also granted.

Conclusion

For the reasons stated above, Ex-Im is ordered to produce Carl Leik's personal journals "that concern the loans, the restructuring or APP," and, if after exhausting the practical means, as opposed to legal means, at its disposal Ex-Im is unable to take possession of the journals from Mr. Leik, APP is granted leave to subpoena Mr. Leik for the journals; APP is granted leave to issue a subpoena to depose William Heidt; Ex-Im is ordered to produce notes Lynette Brown took of meetings regarding APP or cure the deficiencies its privilege log with regard to Ms. Brown's notes; and APP is granted leave to depose Oaktree and Gramercy.

SO ORDERED.

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       November 17, 2005

Copies mailed this date to:

Sarah E. Light, Esq.
Nicole Gueron, Esq.
Assistant United States Attorneys
United States Attorney's Office
86 Chambers Street
New York, New York 10007

Kenneth Robert Puhala, Esq.
Benjamin P. Deutsch, Esq.
Schnader Harrison Segal & Lewis LLP
140 Broadway, Suite 3100
New York, New York 10005