UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
EXPORT-IMPORT BANK OF THE           :
UNITED STATES,                      :
                                    :
            Plaintiff,              :
                                    :
       -against-                    :    Civil Action No. 03-08554
                                    :    (DCP)¹ (JCF)
ASIA PULP & PAPER CO., LTD.,        :
PT INDAH KIAT PULP & PAPER TBK,     :
PT PABRIK KERTAS TJIWI KIMIA TBK,   :
AND PT PINDO DELI PULP AND PAPER    :
MILLS,                              :
                                    :
            Defendants.             :
                                    :
------------------------------------x

[Plaintiff's motion to compel discovery is granted.]

Dated: April 17, 2009

### MEMORANDUM AND ORDER

Before the court is Plaintiff's Motion to Compel responses, from the Defendants, to Plaintiff's interrogatories in aid of judgment.² Defendants object to providing the requested discovery, claiming that to do so would require them to violate an injunction issued by an Indonesian court. Defendants, however have not established that the Indonesian injunction constrains

---

¹Judge Donald C. Pogue of the United States Court of International Trade, sitting by designation.

² See Fed. R. Civ. P. 69(a)(2)("In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person-- including the judgment debtor--as provided in these rules or by the procedure of the state where the court is located.")

their duty of disclosure, or that this Court should, as a matter of comity, grant deference to the Indonesian court order. Accordingly, the court grants Plaintiff's motion.

I

In prior proceedings in this matter, the court granted summary judgment to the Plaintiff ("Ex-Im") for recovery on loan guarantees for debts of the Defendants. Export-Import Bank of U.S. v. Asia Pulp & Paper Co., No. 03-8554 (DCP), 2008 WL 465169, at *8 (S.D.N.Y. Feb. 6, 2008).[3] In further proceedings to enforce that earlier judgment, Ex-Im served interrogatories on the defendants.[4] Defendants responded with a broad general denial, claiming that a temporary, provisional injunction placed on the Defendants by an Indonesian court -- as part of a suit

---

[3] The court has personal jurisdiction over the Defendants, as explained in the court's summary judgment determination. Id. at *1 n.2. See also Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court, 482 U.S. 522, 553 n.4 (1987) (Blackmun, J., concurring in part and dissenting in part) ("It is well established that a court has the *power* to impose discovery under the Federal Rules of Civil Procedure when it has personal jurisdiction over the foreign party.") (emphasis in original) (citation omitted)); Minpeco, S.A. v. Conticommodity Servs., Inc., 116 F.R.D. 517, 520 (S.D.N.Y. 1987).

[4] In response to the court's request, Ex-Im has specifically identified its request for information regarding business relationships and transactions between the defendants and three "intermediary" companies which sell or facilitate the sale of defendants' products in the United States. See First Set of Interrogs. in Aid of J. nos. 7-10, and Second Set of Interrogs. in Aid of J. nos. 4-5, and Defs.' Resp. & Objections, Pl.'s Ex. to Decl. of Li Yu [Doc. # 309] ("Pl.'s Decl. of Yu Ex.") 1. See also Mem. in Supp. of Ex-Im's Pet. to Compel [Doc. # 331] at 7-15.

2

brought against the Defendants by an Indonesian coal company -- prevents them from "providing statements or information regarding their [the Defendants'] respective assets." Sept. 3, 2008 Letter from Puhala to Light, Pl.'s Decl. of Yu Ex. 3 at 1. The Defendants further claim that the Indonesian injunction requires them "not [to] assist others in locating or seeking to attach such assets." Id.[5]

The Defendants, however, have declined the court's request to identify with some specificity responses or documents that are subject to discovery here and are actually constrained by the Indonesian injunction.[6]

Rather, the Defendants' expert witness, an Indonesian attorney, states that, in his legal opinion,

> the Provisional Injunction prohibits Defendants and all

---

[5] Specifically, the "Provisional Injunction" of the Indonesian district court orders that

> the Defendants [] abstain from providing statements and information on the assets of the Defendants and those owned by all subsidiaries of the Defendants to any party temporarily during the examination process of this case, except in respect of those required by the prevailing laws and regulations of the Republic of Indonesia and or as permitted/ordered/requested by the authorized agencies in the Republic of Indonesia.

June 12, 2008 Provisional Inj., P.'s Decl. of Yu Ex. 2 ("Provisional Inj.") at 59.

[6] The court notes, for example, that the discovery request seeks identification of business relationships and transactions, while the Indonesian injunction refers to "assets."

3

>of their subsidiaries, wherever located, from providing statements and information regarding the assets of Defendants and their subsidiaries, except to Indah Lestari [the Indonesian coal company that brought the Indonesian action against the Defendants] . . . , and additionally, as might be required by Indonesian laws or regulations or as permitted, ordered or requested by authorized by Indonesian agencies.

Aff. of Otto Hasibuan, Ex. A. to Pl.'s Decl. of Yu Ex. 3 at 3. Furthermore, Hasibuan states that if Defendants act contrary to the provisional injunction, Defendants "would be exposed to substantial mon[etary] fines." Id. at 4. Hasibuan further states that if Defendants, outside the ordinary course of business, transferred assets that could be attached by Indah Lestari before Defendants had provided Indah Lestari with information about those assets, and before Indah Lestari had had a chance to seek a Security Attachment of such assets, then Defendants would have acted in bad faith and would face punishment by the Indonesian court. Id.

The injunction in question was issued on June 12, 2008.

## II

Unlike an order from another U.S. court, this Court has no legal obligation to give effect or deference to the orders or holdings of a court of a foreign country, absent a specific

treaty or legislative rule.[7] Rather, if the court were to give effect to the foreign injunction,[8] it must be on the basis of comity.

Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Hilton v. Guyot, 159 U.S. 113, 164 (1895).

> In deciding whether to issue an order directing production of information located abroad,[9] and in framing such an order, a court or agency in the United

---

[7] No such treaty or legislative rule has been cited by the parties as applicable to this case.

[8] See Fed. R. Civ. P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.").

[9] The court assumes, for the purposes of deciding this motion, that some of the information required by the Plaintiff's requested discovery may be located abroad. Restatement (Third) of Foreign Relations Law of the United States § 442(1)(a) ("A court or agency in the United States, when authorized by statute or rule of court, may order a person subject to its jurisdiction to produce documents, objects, or other information relevant to an action or investigation, even if the information or the person in possession of the information is outside the United States.") However, the court notes that Defendants have produced no evidence of such location. Such evidence, however, though useful for narrowing the issues in dispute, would not alter the court's disposition.

> States should take into account the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

Restatement (Third) of Foreign Relations Law of the United States § 442(1)(c) (1986); Société Nationale, 482 U.S. at 544 n.28 (1987).

In this circuit, the court also considers "the extent and the nature of the hardship that inconsistent enforcement actions would impose . . ." and "the good or bad faith of the party resisting discovery." Minpeco, 116 F.R.D. at 522; see also Reino De Espana v. Am. Bureau of Shipping, No. 03CIV3573LTSRLE, 2005 WL 1813017, at *3 (S.D.N.Y. Aug. 1, 2005); Madanes v. Madanes, 186 F.R.D. 279, 286 (S.D.N.Y. 1999).

It is the Defendants' burden to demonstrate that the Indonesian injunction actually bars the discovery at issue. "[D]iscovery orders are meant to be followed. A party who flouts such [an] order[] does so at his peril." Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 853 (2d Cir. 1995)(citation and internal quotations omitted); United States v. First Nat'l City Bank, 396 F.2d 897, 904-05 (2d Cir. 1968) (affirming order of civil contempt for noncompliance with subpoena requiring

6

production of documents possessed by bank's foreign branch in Germany over claim that compliance would subject bank to civil liability under German law); In re Parmalat Sec. Litig., No. 04MD1653(LAK), 2006 WL 3151391, at *1 (S.D.N.Y. Nov. 2, 2006) ("It is the Companies' burden [in opposing discovery] to demonstrate that [foreign] Caymans law actually bars the testimony in question") (citing British Int'l Ins. Co. v. Seguros La Republica, S.A., No. 90 Civ. 2370 (JFK)(FM), 2000 WL 713057, at *8 (S.D.N.Y. June 2, 2000).

Defendants have not met their burden here. There is, at most, indirect evidence that the Indonesian injunction is still in place.[10] In addition, by its terms, the Indonesian injunction was to be in effect only for the period of "examination" until the Indonesian coal company could identify attachable assets owned by the Defendants. It was a "temporary" injunction.[11] It appears to the court that ten months is a sufficient time to identify such assets.[12]

---

[10] Defendants' expert asserts only that "the length of time that the Provisional Injunction has been in effect is not unusual." See Decl. of Otto Hasibuan [Doc. # 340] at ¶32.

[11] See Expert Op. [of Pl.'s Expert] Prof. Hans Smit [Doc. #279] ("Smit Decl.") at ¶¶44-45 (explaining that the injunction applies only during the examination process necessary to secure a pre-judgment attachment).

[12] It appears also that a New York State Court earlier gave effect to this injunction, as a matter of state law, in a "vulture fund" case, also involving debts owed by the Defendants. That order, however, was issued on June 20, 2008.

In addition, Plaintiff's expert claims that the explicit exception contained in the Indonesian injunction - indicating that the injunction does not apply "in respect of those [disclosures] required by the prevailing laws and regulations of the Republic of Indonesia and or as permitted/ordered/requested by the authorized agencies in the Republic of Indonesia," Provisional Inj. at 59 -- renders the injunction inapplicable to this matter because Indonesian law would require recognition of Defendants' discovery obligations here. Smit Decl. at ¶¶49-50. Defendants make no persuasive submission to the contrary. Moreover, the Indonesian injunction's exception is of particular importance here because of Defendants' decision to decline the court's request to identify specific responses or documents required by the requested discovery but constrained by the Indonesian injunction. Accordingly, Defendants have failed to establish an actual conflict.

Even had Defendants met their threshold burden, however, applying the seven comity factors does not produce a different result. First, the disclosure requested is clearly important to the litigation here because the parties' dispute has progressed to the stage of enforcement of judgment. Thus, identifying business relationships and transactions that may affect the parties' ability to satisfy that judgment is of prime importance.

Second, Plaintiff's discovery request is both specific and supported by evidence indicating its relevance to the Defendants' economic conduct in the United States. Third, there is no evidence that the information requested originated within or outside the United States; this factor, therefore, does not weigh in either direction. Fourth, because of the blanket nature of Defendants' objection, the information requested does not appear to be available in any more efficient or convenient manner.

Fifth, and of particular importance, there does not appear to be any Indonesian national interest affected by the Injunction at issue here. The injunction is not required by any Indonesian statute or indication of national policy. See Ssangyong Corp. v. Vida Shoes Int'l, Inc., No. 03 Civ. 5014 KMW DFE, 2004 WL 1125659, at *12 (S.D.N.Y. May 20, 2004) (citing Minpeco, 116 F.R.D. at 524) (The foreign interest is weaker when it is non-statutory). Moreover, as noted above, the Indonesian court has had a significant period of time in which to achieve the affect of its temporary injunction; the injunction itself specified no more. U.S. national interests, however, are involved. Ex-Im is an agency of the United States and is acting in support of a clear national interest in the enforcement of commitments made to the United States government. In addition, more generally, "the United States has an undoubtedly 'substantial interest in fully and fairly adjudicating matters before its courts,' which 'is

9

only possible with complete discovery." <u>Reino De Espana</u>, 2005 WL 1813017, at * 4 (quoting <u>Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co</u>., 105 F.R.D. 16, 30 (S.D.N.Y. 1984).

Sixth, on the issue of possible hardship from inconsistent enforcement, Plaintiff's expert points out that the Indonesian injunction does not specifically state a penalty. This, Prof. Smit claims, means that a penalty could only be put in place if the coal company sought damages, damages Prof. Smit thinks the Indonesian Plaintiff is unlikely to seek and also unlikely to be granted by the Indonesian court, especially because of Ex-Im's status as a judgment creditor. Smit Decl. at ¶¶36-38. Again, Defendants produce no more than generalizations in response.

Finally, on the issue of good faith, Defendants claim to have made a generalized request of the Indonesian court for permission to make disclosures. But there is no indication in the record that Defendants informed the court of their particular obligations at issue here. Moreover, Prof. Smit characterizes the injunction itself as unusual because it appears contrary to the normal practice of simply attaching assets. <u>Id.</u> at ¶28. Smit also argues that this sort of injunction is susceptible to abuse, as it could be agreed to by Defendants and a customer in order to frustrate other litigation. <u>Id.</u> at ¶35. Accordingly, the court cannot conclude that the good faith factor requires

10

deference to the Indonesian court. Indeed, weighing all the comity factors, it appears to the court that the type of deference sought by the Defendants should not be granted here.

Therefore, because the Defendants have not established that the Indonesian injunction constrains their duty of disclosure, or that this Court should, as a matter of comity, grant deference to the Indonesian court order with regard to the discovery sought here, Plaintiff's Motion to Compel will be granted.

It is SO ORDERED.[13]

_____
Donald C. Pogue, Judge

Dated: April 17, 2009
       New York, N.Y.

---

[13] The court has offered the parties the opportunity to implement this Memorandum and Order by an agreed upon ORDER.