UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
EXPORT-IMPORT BANK OF THE           :
UNITED STATES,                      :
                                    :
                Plaintiff,          :
                                    :
        -against-                   :   Civil Action No. 03-08554
                                    :   (DCP)[1] (JCF)
ASIA PULP & PAPER CO., LTD.,        :
PT INDAH KIAT PULP & PAPER TBK,     :
PT PABRIK KERTAS TJIWI KIMIA TBK,   :
AND PT PINDO DELI PULP AND PAPER    :
MILLS,                              :
                                    :
                Defendants.         :
                                    :
------------------------------------x

[Defendants' objection and motion to quash certain writs of garnishment granted.]

Dated: April 17, 2009

Lev L. Dassin, Acting United States Attorney for the Southern District of New York, Mara E. Trager, Assistant United States Attorney, Robert William Yalen, Assistant United States Attorney, Li Yu, Assistant United States Attorney for Export-Import Bank of the United States, Plaintiff.


Schnader Harrison Segal & Lewis LLP (Kenneth R. Puhala, Benjamin P. Deutsch, Cynthia A. Murray) for PT Indah Kiat Pulp and Paper TBK, PT Pabrik Kertas Tjiwi Kimia TBK, PT Pindo Deli Pulp and Paper Mills, and Asia Pulp & Paper Co., Ltd., Defendants.


MEMORANDUM AND ORDER

Presently before the court is Defendants' Objection and

---

[1] Judge Donald C. Pogue of the United States Court of International Trade, sitting by designation.

Motion to Quash certain Writs of Garnishment of the defendants' property ("Writs") with regard to "midstream" electronic funds transfers ("EFTs") between intermediary banks. As explained below, because of restrictions on the garnishment of co-owned property, the court grants the Defendants' motion/objection.

I

In prior proceedings in this matter, the court granted summary judgment to the Plaintiff ("Ex-Im") for recovery on loan guarantees for debts of the Defendants. Export-Import Bank of U.S. v. Asia Pulp & Paper Co., No. 03-8554 (DCP), 2008 WL 465169, at *8 (S.D.N.Y. Feb. 6, 2008). In further proceedings to enforce that earlier judgment, the court, pursuant to the Federal Debt Collection Procedures Act of 1990, 28 U.S.C. §§ 3001-3308 ("FDCPA"), granted, the Writs challenged here. The Writs were then served on The Bank of New York Mellon Corporation ("BONY") and Deutsche Bank Trust Company Americas ("Deutsche Bank"). Defendants now object to the Writs insofar as the Writs permit garnishment of EFTs between intermediary banks,[2] claiming

---

[2] See U.C.C. Pref. Note to Art. 4A:

> The funds transfer that is covered by Article 4A is not a complex transaction and can be illustrated by the following example . . . . X, a debtor, wants to pay an obligation owed to Y. Instead of delivering to Y a negotiable instrument such as a check or some other writing such as a credit card slip that enables Y to obtain payment from a bank, X transmits an instruction to X's bank to credit a sum of money to the bank account of Y. In most cases X's bank and Y's bank are

2

that the Uniform Commercial Code ("U.C.C."), adopted by New York, does not permit garnishment of such "midstream" EFTs. See N.Y. U.C.C. § 4-A-503.[3]

---

different banks. X's bank may carry out X's instruction by instructing Y's bank to credit Y's account in the amount that X requested. The instruction that X issues to its bank is a "payment order." X is the "sender" of the payment order and X's bank is the "receiving bank" with respect to X's order. Y is the "beneficiary" of X's order. When X's bank issues an instruction to Y's bank to carry out X's payment order, X's bank "executes" X's order. The instruction of X's bank to Y's bank is also a payment order. With respect to that order, X's bank is the sender, Y's bank is the receiving bank, and Y is the beneficiary. The entire series of transactions by which X pays Y is known as the "funds transfer." With respect to the funds transfer, X is the "originator," X's bank is the "originator's bank," Y is the "beneficiary" and Y's bank is the "beneficiary's bank." In more complex transactions there are one or more additional banks known as "intermediary banks" between X's bank and Y's bank. In the funds transfer the instruction contained in the payment order of X to its bank is carried out by a series of payment orders by each bank in the transmission chain to the next bank in the chain until Y's bank receives a payment order to make the credit to Y's account. In most cases, the payment order of each bank to the next bank in the chain is transmitted electronically, and often the payment order of X to its bank is also transmitted electronically, but the means of transmission does not have any legal significance.

[3] N.Y. U.C.C. § 4-A-503 provides:

For proper cause and in compliance with applicable law, a court may restrain (i) a person from issuing a payment order to initiate a funds transfer, (ii) an originator's bank from executing the payment order of the originator, or (iii) the beneficiary's bank from releasing funds to the beneficiary or the beneficiary from withdrawing the funds. *A court may not otherwise restrain a person from issuing a payment order, paying or receiving payment of a payment order, or otherwise*

3

Ex-Im argues in response that the broad definition of "property" contained in the FDCPA[4] permits garnishment of EFTs, and that the FDCPA preempts any limitations provided by New York law.[5] Plaintiff also relies on circuit law holding, in an admiralty proceeding, that "EFT funds in the hand of an intermediary bank may be attached pursuant to Admiralty Rule B(1)(a)"[6] notwithstanding the restrictions provided by the U.C.C. Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 278 (2d Cir. 2002)("Winter Storm").[7] Plaintiff argues that, because the

---

*acting with respect to a funds transfer.* (emphasis added).

[4] "'Property' includes any present or future interest, whether legal or equitable, in real, personal (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held . . . ." 28 U.S.C. § 3002(12).

[5] "This chapter shall preempt State law to the extent such law is inconsistent with a provision of this chapter." 28 U.S.C. § 3003(d).

[6] Admiralty Rule B(1) provides:

(a) If a defendant is not found within the district . . . , a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property-up to the amount sued for- in the hands of garnishees named in the process.

[7] In turn, Winter Storm relied in part on the holding in United States v. Daccarett, 6 F.3d 37 (2d Cir. 1993), that "an EFT while it takes the form of a bank credit at an intermediary bank is clearly a seizable *res* under the forfeiture statutes," id. at 55, and permitting attachment of "the proceeds of illegal drug sales while the proceeds were being routed through intermediary banks in New York." Consub Del. LLC v. Schahin Engenharia Limitada, 543 F.3d 104, 110 (2d Cir. 2008).

4

FDCPA's definition of property, like the language of Admiralty Rule B, includes "tangible and intangible" interests and, going beyond Admiralty Rule B, also reaches "any present or future interest," whether "vested or contingent," the <u>Winter Storm</u> rule should prevail here.

II

Despite the breadth of the FDCPA's definition of property, however, and the force of the FDCPA's preemption provision, the difficulty with the Plaintiff's view is that it runs afoul of the requirements of the FDCPA's garnishment provision on the issue of whose property may be garnished.[8]  In relevant part, the

---

[8] <u>See</u>, <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434, 445 n. 6 (2d Cir. 2006) ("The correctness of our decision in *Winter Storm* seems open to question, especially its reliance on *Daccarett,* 6 F.3d at 55, to hold that EFTs are property of the beneficiary or sender of an EFT. Because *Daccarett* was a forfeiture case, its holding that EFTs are attachable assets does not answer the more salient question of *whose* assets they are while in transit. In the absence of a federal rule, we would normally look to state law, which in this case would be the New York codification of the Uniform Commercial Code, N.Y. U.C.C. Law §§ 4-A-502 to 504. Under state law, the EFT could not be attached because EFTs are property of neither the sender nor the beneficiary while present in an intermediary bank. *Id.* §§ 4-A-502 cmt. 4, 4-A-504 cmt. 1."). <u>But</u> <u>see</u> <u>Consub Del.</u>, 543 F.3d at 109-11 ("*Winter Storm* was correctly decided. . . . In *Winter Storm*, this Court . . . found that there was no principled distinction between the seizure pursuant to the forfeiture laws in *Daccarett* and the admiralty attachment at issue in *Winter Storm*. . . . Even more to the point, *Winter Storm* reasoned, independent of *Daccarett,* that '[t]here is no question that federal admiralty law regards a defendant's bank account as property subject to maritime attachment under Rule B." [<u>Winter Storm</u>,] 310 F.3d at 276. This Court was therefore '[un]able to discern in admiralty law or elsewhere a basis for regarding [the defendant's funds] in [the intermediary bank's] hands prior to

5

garnishment provision provides that

> A court may issue a writ of garnishment against property (including nonexempt disposable earnings[9]) in which the debtor has a substantial nonexempt[10] interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor. Co-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located.

28 U.S.C. § 3205(a).

The problem is that under the Plaintiff's interpretation, the FDCPA's broad definition of property would allow the garnishment of a midstream EFT both when a judgment debtor is a sender and when that judgment debtor is a beneficiary of such a transfer.[11] Such an interpretation, however, results in any single EFT transfer – indeed, of the same EFT transfer - being

---

their electronic transfer to [the plaintiff's bank account] as anything other than funds held by [the intermediary bank] for the account of [the defendant].' Id.").

   The court notes that in Winter Storm, the intermediary bank had possession of the debtor's funds. See Reibor Int'l Ltd. v. Cargo Carriers (KACZ-CO.), 759 F.2d 262, 263 (2d Cir. 1985) (holding a maritime garnishment served before garnishee comes into possession of property to be garnished is absolutely void). The FDCPA avoids this restriction, however, by permitting garnishment of a "future interest" in property, "whether vested or contingent." 28 U.S.C. § 3002(12).

   [9] "'Nonexempt disposable earnings' means 25 percent of disposable earnings, subject to section 303 of the Consumer Credit Protection Act." 28 U.S.C. § 3002(9).

   [10] 28 U.S.C. § 3002(12)(A)-(B) exempts certain Indian property from the FDCPA's otherwise broad definition of property. Those exemptions are not relevant here.

   [11] The Plaintiff would so interpret the Writs.

"co-owned" by the sendor and the beneficiary of the transfer, and any such transfer would be subject both to garnishment as the property of a sending judgment debtor and as the property of a beneficiary judgment debtor. The FDCPA's co-ownership limitation, however, does not permit such conflicting garnishments. Rather, under 28 U.S.C. § 3205(a), co-owned property is subject to garnishment only "to the same extent as [such] co-owned property is subject to garnishment under the under the law of the State in which such property is located." And, as noted above, under New York's Uniform Commercial Code, EFT transfers are not subject to garnishment.

The court is obligated to give effect to the FDCPA's co-ownership provision. Duncan v. Walker, 533 U.S. 167, 174 (2001) ("a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (quoting Market Co. v. Hoffman, 101 U.S. 112, 115 (1879)). Thus, as a result of the FDCPA's co-ownership limitation, allowing garnishment of EFTs both as property of a judgment debtor beneficiary and as property of a judgment debtor sender is not permitted. Moreover, under the U.C.C., the EFTs are held by the intermediary banks, for their own accounts or for the accounts of other banks, not for the account of the sendor or as a future interest of the beneficiary. Accordingly, by its terms, the FDCPA does not

contemplate the garnishment sought by the government here.

Nor is this result in tension with the Circuit's admiralty decisions. The admiralty garnishment provision does not contain a co-ownership limitation like the FDCPA's.

Importantly too, the purpose of the admiralty garnishment provision differs from that of the FDCPA. "'The rationale underlying maritime attachment is twofold. First, attachment provides a means to assure satisfaction if a suit is successful'; the second purpose is 'to insure a defendant's appearance in an action, an aspect of attachment inextricably linked to a plaintiff's substantive right to recover.'" Winter Storm, 310 F.3d at 268 (quoting Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co., 85 F.3d 44, 48 (2d Cir. 1996)). Moreover, Winter Storm and its progeny all involved funds actually held by sending banks at the time of garnishment, not garnishment of a past or future interest such as those at issue here. Rather, under Reibor Int'l, 759 F.2d at 263, the Writs issued here, had they been issued in an admiralty proceeding, would be void.

Accordingly, the Writs shall be quashed insofar as they may have been interpreted to permit garnishment of EFTs between intermediary banks.

It is SO ORDERED.[12]

```
                                    _____
                                    Donald C. Pogue, Judge
```

Dated: April 17, 2009
      New York, N.Y.

---

[12] The court has offered the parties the opportunity to implement this Memorandum and Order by an agreed upon ORDER.